RECEIVED
NOV 16 2011
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

MARLIN DALE PLAYER, ET AL.

versus

CIVIL ACTION NO. 06-1980
JUDGE TOM STAGG

THE KANSAS CITY SOUTHERN
RAILWAY CO.

## MEMORANDUM RULING

Before the court is a motion for summary judgment by Kansas City Southern Railway Company ("KCS") as to the claims of Jeremy Francis.[1] See Record Document 78. For the reasons set forth below, the defendant's motion for summary judgment is **GRANTED**.

## I. BACKGROUND

Jeremy Francis ("Francis") was hired as a conductor trainee by KCS on September 25, 2002. See Record Document 78, Ex. 1 at 25. He eventually became a full conductor after receiving the required training. This training included learning

---

[1] Marlin Player, Larry Diggs, Gregg Gilliam, and Lawrence Martin are also plaintiffs in this action. All claims by Diggs and Martin were dismissed on summary judgment prior to this motion. See Record Document 68. KCS filed separate motions for summary judgment against the remaining plaintiffs. See Record Documents 78, 79, and 80.

various safety rules and operations such as the General Code of Operating Rules ("GCOR") and the Federal Railroad Administration Rules. See id. at 27-28. He later applied for a locomotive engineer position and became federally certified on July 21, 2004. See id. at 46. To receive his certification, Francis passed a written examination and a check ride with the Manager of Operating Practices. As an engineer, he was required to maintain his certification by the Federal Railway Administration. See id. at 47.

Prior to his dismissal, Francis committed six GCOR violations while working at KCS. Before he became an engineer, he committed four violations which included: two failures to report to duty at the designated time, which resulted in a reprimand and a deferred suspension respectively; a derailment causing equipment damage resulting in suspension; and a failure to follow written instructions per daily memo regarding pick up and failure to fill out work a order, which also resulted in suspension. See Record Document 78, Ex. 2. While serving as an engineer, he committed two violations which included: failure to be available on February 26, 2005, resulting in suspension; and the failure to properly inspect train on February 14, 2006, which resulted in his termination on March 1, 2006. See id. He signed investigation waivers and acknowledgments of responsibility for the five violations prior to the February 14, 2006 incident which led to his termination. See id., Ex. 3.

2

On October 7, 2006, Francis received an offer of leniency and reinstatement without pay for time lost and with seniority and vacation rights unimpaired. See id., Ex. 6. In exchange, Francis had to agree to, inter alia, a physical examination, possible remedial training, and a waiver of "[a]ny and all claims in connection with his case." Id. The offer was open for ten days, and on October 13, 2006, Francis accepted. He currently works as a locomotive engineer for KCS. See Record Document 78, Ex. 1 at 133. On July 17, 2007, Francis joined in the instant action alleging claims of racial discrimination and retaliation against KCS. See Record Document 24.

On September 29, 2011, KCS filed the instant motion for summary judgment alleging that Francis waived his right to sue under 42 U.S.C. § 1981 and that, regardless of the waiver, his claims lack merit. See Record Document 78. In his opposition, Francis asserts that his section 1981 claims were not waived and that KCS dismissed him from service based upon his race. Francis, however, concedes his retaliation claim. See Record Document 89 at 10. Therefore, the court will only address whether the leniency agreement was a valid waiver of Francis's right to bring suit under section 1981 and whether his discrimination claim has merit.

3

## II. ANALYSIS

A.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and

---

[2] The court notes that the newly amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.     Release Of Section 1981 Claims.**

"A general release of Title VII claims does not ordinarily violate public policy. To the contrary, public policy favors voluntary settlement of employment discrimination claims brought under Title VII." Smith v. Amedisys Inc., 298 F.3d 434, 441 (5th Cir. 2002) (citing Rogers v. Gen. Elec. Co., 781 F.2d 452, 454 (5th Cir. 1986)). Waivers of such rights, however, are not to be lightly inferred. See Watkins v. Scott Paper Co., 530 F.2d 1159, 1172 (5th Cir. 1976). The validity of a waiver of Title VII claims is governed by federal law.[3] See Smith, 298 F.3d at 441. Employees may validly release only Title VII claims that are connected to "discriminatory acts or practices which antedate the execution of the release." Rogers, 781 F.2d at 454 (citing United States v. Allegheny-Ludlum Industries, Inc., 517 F.2d 826, 853 (5th Cir. 1975)). Waivers of prospective Title VII rights violate public policy and are, therefore, invalid. See Rogers, 781 F.2d at 454.

Waivers of Title VII claims must also be "knowing and voluntary." See Smith,

---

[3] The court addresses the waiver of Francis's section 1981 claims under the same analysis as it would with Title VII claims since they both arise from federal law and involve employment discrimination based upon race.

298 F.3d at 441. The employer bears the initial burden of establishing that the employee "signed a release that addresses the claims at issue, received adequate consideration, and breached the release." Id. (citing Williams v. Phillips Petroleum Co., 23 F.3d 930, 935 (5th Cir. 1994)). Once the employer establishes those elements, the burden then shifts to the employee who must "demonstrate that the release was invalid because of fraud, duress, material mistake, or some other defense." Id. The court considers the following relevant factors to determine if the employee has met that burden:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of [the] plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

Id.; O'Hare v. Global Natural Res., 898 F.2d 1015, 1017 (5th Cir. 1990).

The alleged waiver at issue in this case is contained in the leniency agreement signed by Francis and KCS. The agreement states, "Any and all claims in connection with this case, initiated or not, are withdrawn and are further barred." Record Document 78, Ex. 6. Francis argues that if the waiver is interpreted to include his section 1981 claim, then it is an invalid waiver of his prospective federal rights. He reasons that because he was not aware of a section 1981 claim at the time of signing

6

the agreement, the claim did not exist at the time.

Francis's reasoning is mistaken. The Fifth Circuit has stated that employees may only release Title VII claims arising from "discriminatory <u>acts</u> or <u>practices</u> which antedate the execution of the release." <u>Rogers</u>, 781 F.2d at 454 (quoting <u>Allegheny-Ludlum</u>, 517 F.2d 826, 853 (5th Cir. 1975)) (emphasis added). The law does not provide that employees may only release those claims that they had knowledge of before the execution of the release. Furthermore, the court in <u>Rogers</u> found that the plaintiff's Title VII claim, termination of employment based on sex, occurred more than three months before the plaintiff executed the release, and therefore, the release "did not violate the principles barring prospective waiver of Title VII rights . . . ". <u>Rogers</u>, 781 F.2d at 455.

Similarly, Francis's section 1981 claim is that KCS terminated his employment based on his race. <u>See</u> Record Document 24 at 5-6. Therefore, according to <u>Rogers</u>, his claim based on wrongful termination, which occurred before he signed the waiver, is not a prospective right; it existed at the time of signing of the waiver. Francis does not mention any other adverse employment action that occurred after the execution of the waiver nor does he mention any other federally protected right that was violated after he signed the leniency agreement. The court does not find a violation of any federally protected right that occurred after the execution of the waiver.

Francis also contends that he did not knowingly waive his right to bring a discrimination claim. Specifically, he argues that because he did not know he had any causes of action for racial discrimination at the time of signing, it is impossible for him to "knowingly" waive those rights. He cites to Rogers in support, stating in that case the plaintiff believed she had a valid discrimination claim at the time she executed the release, but rather than pursuing legal remedies, she accepted $800.00 in exchange for a release. See Rogers, 781 F.2d at 456. In contrast, Francis alleges that he was unaware of any discrimination causes of action at the time of signing the leniency agreement, so he could not have knowingly waived the right.

Francis's reliance on Rogers is misplaced. The court in Rogers neither expresses nor implies that an employee must be aware that he or she has a discrimination claim against the employer to validly execute a release of such claims. Knowledge of a claim would be a significant factor to determine whether an employee has knowingly and voluntarily waived the right, but Fifth Circuit jurisprudence does not hold that a valid waiver requires such knowledge.

The undisputed facts demonstrate that Francis signed the leniency agreement knowingly and voluntarily. KCS has met its burden in establishing that Francis: (1) signed the release which addresses the claim at issue[4]; (2) received adequate

---

[4] The agreement's language "Any and all claims in connection with this case" includes Francis' section 1981 claim arising out of his termination.

consideration in the form of reinstatement with certain rights unimpaired; and (3) breached the release by filing the instant suit. Francis, however, has not demonstrated that the release is invalid due to fraud, duress, material mistake, or any other defense. Applying the factors mentioned above, the court finds the opposite to be true. Francis graduated from high school, received professional training while at KCS, and is a certified locomotive engineer. See id., Ex. 1. He was allowed ten days to consider the reinstatement offer. See id., Ex. 6. His own testimony indicates that he understood the terms of the agreement, and there is no evidence that indicates he had any difficulty in understanding its terms. See id., Ex. 1 at 86-87.

Furthermore, the language of the release is clear and unambiguous. Language such as "any and all claims" is unambiguous for the purpose of releasing federal claims. See Chaplin v. NationsCredit Corp., 307 F.3d 368, 372 (5th Cir. 2002). A valid release does not have to specify Title VII claims or other federal causes of action. See Smith, 298 F.3d at 443. The language in the leniency agreement "Any and all claims in connection with this case" includes any claim Francis may have against KCS that relates to his termination. See Record Document 78, Ex. 7 at 112. Francis's section 1981 claim for wrongful termination is exactly the type of claim the agreement contemplates.

Additionally, Francis's decision to continue to work for KCS effectively

ratifies the terms of the leniency agreement. "Even if a release is tainted by misrepresentation or duress, it is ratified if the releasor retains the consideration after learning that the release is voidable." Williams, 23 F.3d at 937. "A person who signs a release, then sues his or her employer for matters covered under the release, is obligated to return the consideration." Id. As a matter of equity, Francis cannot seek relief for his alleged wrongful termination and continue to be employed by KCS when the parties bargained otherwise. By filing his suit and continuing his employment, Francis has breached his leniency agreement with KCS.

KCS and Francis have executed an agreement that waives all claims Francis may have against KCS relating to his termination. This waiver includes the section 1981 claim that he filed in the instant case. Francis entered into the agreement knowingly and voluntarily. There is no evidence indicating duress or any type of misrepresentation. Regardless, Francis's decision to continue his employment with KCS ratifies any defect with the agreement. For these reasons, Francis is barred from bringing his racial discrimination claim under section 1981.

C.  **Racial Discrimination.**

Assuming arguendo that Francis's claim was not barred by the leniency agreement, his claim still fails on the merits. Under Title VII, "[a]n employee can prove discrimination through direct or circumstantial evidence." Jones v. Robinson

Prop. Grp., L.P., 427 F.3d 987, 992 (5th Cir. 2005).[5] For cases of discrimination based on circumstantial evidence, the court applies the McDonnell Douglas burden-shifting analysis. See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

> To survive summary judgment under McDonnell Douglas, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.[6] If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.

Davis, 383 F.3d at 317 (citations omitted). Since both parties agree that Francis cannot present direct evidence of racial discrimination, Francis's claim will be analyzed under the McDonnell Douglas framework.

To establish his prima facie case, Francis must demonstrate that he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his

---

[5] Claims of racial discrimination in employment, pursuant to Title VII and section 1981, are governed by the same evidentiary framework. See DeCorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007).

[6] "This burden on the employer is only one of production, not persuasion, involving no credibility assessments." Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).

protected group or was treated less favorably than other similarly situated employees outside the protected group.

McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). Because the first three elements in this case are uncontested, Francis need only establish that he was treated less favorably than other similarly situated employees outside his protected group. "Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated." Lee v. Kan. City S. Ry., 574 F.3d 253, 259 (5th Cir. 2009). "Likewise, employees who have different responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated." Id. at 259-60.

The Fifth Circuit has consistently held that a plaintiff who proffers a fellow employee as a comparator must demonstrate that the employment actions at issue were taken "under nearly identical circumstances."[7] "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." Id. at 260. "And, critically, the

---

[7] See id. at 260; see also Perez v. Tex. Dept. Of Criminal Justice, 395 F.3d 206, 213 (5th Cir. 2004); Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995).

plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." Id.

Francis has alleged four comparators, all of whom are raised for the first time in his opposition. He asserts that the circumstances surrounding Bill Abernathy ("Abernathy"), James Breaux ("Breaux"), Matthew Duet ("Duet"), and Randall Yount ("Yount") are "nearly identical" to his own.[8] The comparators, Gregory Gilliam and Steve Sandlin, who were previously alleged, were not addressed in Francis' opposition to motion for summary judgment.

The court does not find any of the alleged comparators to be proper. Each comparator was subject to different disciplinary policies, worked in different locations, had significantly different disciplinary histories, held different jobs, or some combination thereof. See Record Document 96, Ex. 2. One of the most significant differences is that all the alleged comparators never received disciplinary action from James Riney, the supervisor who terminated Francis on March 1, 2006. See id.; see also Wyvill v. United Companies Life Ins. Co., 212 F.3d 296, 305 (5th

---

[8] Regarding the four newly raised comparators, KCS argues that the court is not obligated to consider them since they were not raised previously. See Meyer v. Guaranty Energy Corp., et al., 1988 WL 51257, *2 (E.D. La. 1988) (declining to consider previously non-pleaded allegations of material misrepresentations in a securities fraud case). However, out of an abundance of caution, the court will still address each alleged comparator.

Cir. 2000).

Even if Francis could establish a prima facie case of discrimination, the evidence he presents is insufficient to show that KCS's reason for termination is pretextual. KCS has met its burden of producing legitimate, nondiscriminatory reasons for the adverse employment action by stating the dismissal was a result of the violation on February 14, 2006, and Francis's prior discipline history. See Record Document 78, Ex. 5.

Once the employer produces a legitimate, nondiscriminatory reason for the challenged employment action, the plaintiff must produce substantial evidence of pretext rebutting each of the nondiscriminatory reasons proffered by the employer. See Wallace v. Methodist Hosp. Sys., 271 F.3d 213, 219-20 (5th Cir. 2001). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." Id.

As discussed previously, Francis has failed to present sufficient evidence of disparate treatment by not identifying any employees of the non-protected class who

14

were treated more favorably under "nearly identical" circumstances. See Turner v. Kan. City S. Ry. Co., 622 F.Supp.2d 374, 394 (E.D. La. 2009). Francis also fails to demonstrate that KCS's proffered reasons are unworthy of credence. He has signed acknowledgments admitting responsibility for five violations of KCS's operational and safety rules, and an investigation found Francis to be at fault for the incident which resulted in his dismissal.

Francis alleges that KCS's explanations are unworthy of credence because KCS did not follow its own disciplinary policy; however, the evidence he presents does not support that allegation. He claims that human resources never reviewed any employee terminations in compliance with KCS's discipline policy because Kathy Alexander, the Director of Labor Relations, testified that no efforts were made to compare the discipline with other employees who committed the same or similar offenses. Francis confuses the act of not comparing disciplinary actions for similar offenses with the act of not reviewing or approving disciplinary actions altogether. Conclusory and unsubstantiated allegations will not satisfy the plaintiff's burden at summary judgment. See Ramsey, 286 F.3d at 269. Francis has failed to establish that KCS's reasons for its adverse employment action are pretextual. Accordingly, the court grants KCS's motion for summary judgment with respect to Francis's discrimination claim.

## III. CONCLUSION

For the foregoing reasons, KCS's motion for summary judgment is **GRANTED**. Francis's section 1981 claims for racial discrimination and retaliation are **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 15th day of November, 2011.

JUDGE TOM STAGG