RECEIVED

NOV 16 2011

TONY R. MOORE, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

---

MARLIN DALE PLAYER, ET AL.

versus

THE KANSAS CITY SOUTHERN
RAILWAY CO.

CIVIL ACTION NO. 06-1980

JUDGE TOM STAGG

---

### MEMORANDUM RULING

Before the court is a motion for summary judgment by Kansas City Southern

Railway Company ("KCS") as to the claims of Marlin Player.[1] See Record Document

80. For the reasons set forth below, the defendant's motion for summary judgment

is **GRANTED**.

### I. BACKGROUND

Marlin Player ("Player") was hired by KCS in October of 1991. He initially

worked as a track laborer in Arkansas and Oklahoma and later transferred to the

Shreveport yard where he became a brakeman. See Record Document 80, Ex. 1 at

---

[1] Larry Diggs, Jeremy Francis, Gregg Gilliam, and Lawrence Martin were
later joined as plaintiffs in this action. All claims by Diggs are Martin were
dismissed on summary judgment prior to this motion. See Record Document 68.
KCS filed separate motions for summary judgment against the remaining
plaintiffs. See Record Documents 78, 79, and 80.

13-16.  While working as a brakeman, he was a member of United Transportation Union (UTU).  See id., Ex. 1 at 16-17.  He was dismissed from service on June 3, 2005, after committing a major violation of KCS's General Code of Operating Rules ("GCOR").  See id., Ex. 6.

Prior to his dismissal, Player committed five other GCOR violations within a "three (3) year rolling period."  See id., Ex. 7.  He received a five-day suspension for a derailment, a major infraction, that occurred on August 6, 2003.  See id., Ex. 2.  He received a reprimand for a sideswipe resulting in equipment damage, a minor infraction, on November 11, 2003.  On January 2, 2004, he received a five-day actual/twenty-five-day record suspension for riding on moving equipment while serving as a conductor, a major infraction.  He received a five-day actual/forty-day record suspension for a bypassed coupler incident which resulted in damage to two cars, a minor infraction, on March 13, 2004.  On August 12, 2004, he received a forty-five-day suspension for marking off under false pretenses, a minor infraction.  Player signed investigation waivers and acknowledgments of responsibility for each of these violations.  See id.

On May 28, 2005, Player committed another violation involving a bypassed coupler incident which resulted in equipment damage.  See id., Ex. 2.  This occurred when Player attempted to add a car to the train while in a curve on the track.  KCS

2

conducted a formal investigation of the incident and determined that Player had committed a violation of the GCOR.  See id., Ex. 6.  On June 3, 2005 he was dismissed from service.[2]  See id.

On March 2, 2006, Player filed a racial discrimination and retaliation charge with the Equal Employment Opportunity Commission ("EEOC") arising out of the June 3, 2005 dismissal.  The EEOC concluded that KCS did not commit any statutory violations and closed Player's file on July 27, 2006.  See Record Document 80, Ex. 10.

Player also appealed his dismissal to the Public Law Board ("PLB") pursuant to the collective bargaining agreement.  See id., Ex. 8.  In his appeal, he petitioned for, inter alia, return to service with seniority unimpaired and pay for all time lost.  On November 2, 2006, the PLB found that Player was "indeed guilty as charged," but further stated that although it was evident that KCS met its necessary burden of proof for the administration of a severe disciplinary penalty, Player's dismissal from service was "harsh and unreasonable."  Id.  The PLB modified the dismissal to "a suspension

---

[2] KCS's discipline policy states that discipline is progressive in nature.  See Record Document 80, Ex. 7.  "There should not be an instance where any employee who is being assessed discipline for a second or third offense receives less tha[n] what had been assessed for a previous violation."  Id.  The policy also considers a "three (3) year rolling period" of violations that have occurred when determining the appropriate disciplinary action.  See id.

in the amount of time [Player] had been out of service, and that [he] be reinstated to service with seniority and other benefits unimpaired, but without compensation for time lost." Id.

Before his reinstatement by the PLB, Player filed suit against KCS on October 26, 2006, alleging acts of racial discrimination and retaliation. On July 29, 2011, KCS filed a motion for summary judgment with respect to these claims.

## II. ANALYSIS

### A.  Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]  Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004).  If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must

---

[3] The court notes that the newly amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." <u>Gen. Universal Sys., Inc. v. Lee</u>, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. <u>See</u> <u>Boudreaux v. Swift Transp. Co.</u>, 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002).

**B.    Racial Discrimination.**

Player alleges racial discrimination by KCS in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, <u>et. seq.</u> and section 1981 of the United States Code, 42 U.S.C. § 1981.  Title VII provides that "[i]t shall be an unlawful employment practice for an employer--(1) to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Section 1981 provides that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981. Claims of racial discrimination in employment,

5

pursuant to Title VII and section 1981, are governed by the same evidentiary framework.  See DeCorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007).

Under Title VII, "[a]n employee can prove discrimination through direct or circumstantial evidence." Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 992 (5th Cir. 2005).  For cases of discrimination based on circumstantial evidence, the court applies the McDonnell Douglas burden-shifting analysis.  See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

> To survive summary judgment under McDonnell Douglas, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.[4]  If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.

Davis, 383 F.3d at 317 (citations omitted).  Since both parties agree that Player cannot present direct evidence of racial discrimination, Player's claims will be analyzed under the McDonnell Douglas framework.

---

[4] "This burden on the employer is only one of production, not persuasion, involving no credibility assessments." Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).

6

## 1.    Prima Facie Case.

Player claims that KCS dismissed him from service and failed to reinstate him because of his race.  As noted previously, the court must first consider whether Player has established a prima facie case of discrimination.  Under this test, a plaintiff must demonstrate that he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).

Because the first three elements in this case are uncontested, Player need only establish that he was treated less favorably than other similarly situated employees outside his protected group.  "Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated."  Lee v. Kan. City S. Ry., 574 F.3d 253, 259 (5th Cir. 2009).  "Likewise, employees who have different responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated."  Id. at 259-60.

7

The Fifth Circuit has consistently held that a plaintiff who proffers a fellow employee as a comparator must demonstrate that the employment actions at issue were taken "under nearly identical circumstances."[5] "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." Id. at 260. "And, critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." Id.

Player has alleged six comparators, two of whom were originally raised in the complaint and four of whom were raised for the first time in Player's opposition. He asserts that the circumstances surrounding Greggory Bickham ("Bickham"), Steve Sandlin ("Sandlin"), Bill Abernathy ("Abernathy"), James Breaux ("Breaux"), Matthew Duet ("Duet"), and Randall Yount ("Yount") are "nearly identical" to his

---

[5] See id. at 260; see also Perez v. Tex. Dept. Of Criminal Justice, 395 F.3d 206, 213 (5th Cir. 2004); Mayberry v. Vought Aircraft Co., 55 F.3d 1086,1090 (5th Cir. 1995).

own.  The originally raised comparators, Bickham and Sandlin, are engineers for KCS, in contrast to Player's position as a brakeman.[6]

Player cites to six violations committed by Bickham that date back to June of 2003.  On June 6, 2003, Bickham was terminated and then reinstated for occupying a main track without proper authority.  See Record Document 91.  He received another termination followed by reinstatement on March 11, 2005, after another five violations.[7]  These violations included:  improper train handling which resulted in a five-day recorded suspension; two occasions of failure to be available, both resulting in reprimand; failure to inspect train resulting in a thirty-day recorded suspension; and failure to adhere to train speed limitations which caused a rear end collision, resulting in his termination.[8]  See id.

Player cites four violations committed by Sandlin in his opposition.  These four violations include:  three failures to inspect train resulting in a forty-five-day suspension, a five-day actual/sixty-day recorded suspension, and a thirty-day suspension respectively; and a side collision resulting in dismissal on March 4, 2005.

---

[6] Player originally alleged Greg Bickham, Steve Sandlin, and Clay Lewter as comparators.  See Record Document 1 at 3.  In his opposition, Player does not address the issue of whether Lewter is a valid comparator.

[7] Both of the reinstatements were offered by KCS.  See Record Document 91.

[8] Player's opposition mentions another violation by Bickham on October 23, 2006, which resulted in termination without a reinstatement.  See Record Document 87 at 3.

See Record Document 87, Ex. 2.  Player claims that Sandlin was reinstated after the March 4 dismissal but does not appear to cite to any evidence in support.

In his opposition, Player argues that the comparators must be KCS employees who committed similar offenses under supervisors and labor relation directors who are governed by the same disciplinary policy.  He also contends that the court cannot differentiate between engineers, conductors, and brakemen because they are charged under the same rules, have the same supervisors, can be liable for the same violations, and the KCS disciplinary policies do not differentiate between these job classifications.  He also states that Kathy Alexander, Director of Labor Relations, was the main decision maker and retained ultimate authority to offer reinstatement to train employees, and, therefore, conductors, brakemen, and engineers are under the same supervisor with respect to reinstatements.  Based on these allegations, Player concludes that Bickham and Sandlin are proper comparators.

KCS asserts that the circumstances surrounding Bickham and Sandlin are not "nearly identical," and therefore, they are not valid comparators.  In support, KCS argues that Bickham and Sandlin, as engineers, had significantly different duties and responsibilities, served in different locations with different supervisors, and had different disciplinary histories.  Specifically, KCS alleges that Bickham was "responsible for actually operating locomotives at higher speeds across several states

and various types of terrain and engaging in various locomotive and train movements" and, in contrast, Player's job as a brakeman/switchman involved low speed switching of cars and trains only at one site. Record Document 80, Memo at 10. KCS further states that Player and Bickham served in different locations and had different supervisors.[9]  KCS concludes that because of the differences in their respective positions, the facts surrounding Bickham and Sandlin are not "nearly identical" to Player's.

The court finds that Player has failed to demonstrate that he is similarly situated to his alleged comparators..  While Player asserts several significant points (the violations of Player and the alleged comparators are of "comparable seriousness"; all three individuals are governed by the same disciplinary policy; and the same individual oversaw leniency[10]), he must still show that he and the alleged comparators had substantially similar job responsibilities.  Player fails in this aspect.

This court has previously determined that engineers and conductors are not comparable so as to satisfy <u>McDonnell Douglas</u>. <u>See</u> <u>Cargo v. Kan. City S. Ry. Co.</u>, 2011 WL 1304741, *4 (W.D. La. 2011).  Each job has different responsibilities, and

---

[9] KCS makes virtually the same argument with respect to Sandlin.

[10] The Fifth Circuit in <u>Lee</u> found that although two KCS engineers had different supervisors, the same individual, Kathy Alexander, oversaw leniency, so the ultimate decision maker on rehiring was the same person for both engineers. <u>See</u> 574 F.3d at 262.

an engineer is a step above a conductor in KCS's hierarchy.  See id.  Player has never

been certified as a locomotive engineer for KCS.  See Record Document 80, Ex. 3.

Not only are Player and his alleged comparators' responsibilities substantially

different, but also the geographic locations of their work differ.  For example,

Bickham was an engineer serving in different territories, including rural Texas, while

Player worked primarily in Shreveport.  See id.  While some of their duties may

overlap, that fact alone is insufficient to make these two positions similarly situated.[11]

For these reasons, Player is not similarly situated to Bickham nor Sandlin.

Regarding the four newly raised comparators, KCS argues that the court is not

obligated to consider them since they were not raised previously.[12]  Even if

Abernathy, Duet, Breaux, and Yount were properly before this court, Player would

still be unable to establish his prima facie case for the reasons stated below.

Abernathy and Duet were locomotive engineers during the relevant time

period.  See Record Document 87, Exs. 3 and 5.  As previously stated, conductors and

engineers are not "nearly identical" for the purpose of McDonnell Douglas.

Therefore, Abernathy and Duet are not valid comparators.

_____

[11]  The EEOC also found Player's alleged comparators to be improper.  See
Record Document 80, Ex. 9.  While the court is not bound by the EEOC's
conclusions, the court still considers them in making its determination.
   [12] See Meyer v. Guaranty Energy Corp., et al., 1988 WL 51257, *2 (E.D. La.
1988)(declining to consider previously non-pleaded allegations of material
misrepresentations in a securities fraud case).

Breaux served as a conductor at KCS's Baton Rouge location during the relevant time period, had a different supervisor from Player, and committed four violations in a three year rolling period, while Player served in Shreveport and committed six violations within a two year span. See id., Ex.4; Record Document 94, Ex. 1. Generally, employees with different supervisors who work for different divisions of a company are not similarly situated. See Lee, 574 F.3d at 259. Considering their different work locations, different supervisors, and different disciplinary histories, the court finds that Breaux and Player are not proper comparators with respect to Player's discriminatory dismissal claim. Regarding Player's failure to be reinstated claim, Breaux never had an opportunity to get reinstated because he was never dismissed from service. Accordingly, Breaux and Player cannot be compared for the purpose of Player's failure to reinstate claim.

Lee is distinguishable from the instant case. See 574 F.3d at 262. In Lee, the fact that the plaintiff and his alleged comparator were each dismissed by different supervisors did not prevent them from being "nearly identical." The Fifth Circuit reasoned that because one of the plaintiff's claims was failure to receive leniency and be reinstated and the same individual had authority to grant leniency, the plaintiff and his alleged comparator were "nearly identical", despite the fact they were dismissed by different supervisors. See id. As stated above, Breaux was never dismissed from

service so Player can only compare himself to Breaux for his discriminatory dismissal claim. In this context, the fact that Player and Breaux had different supervisors with the authority to terminate is more significant than in <u>Lee</u> because the ultimate employment action of which Player complains is the termination as opposed to the reinstatement. That fact along with the different work locations and disciplinary histories is sufficient to find Breaux and Player are not similarly situated with respect to his dismissal claim.

Yount served as a train dispatcher for a majority of the relevant time period and was never disciplined by the supervisor who dismissed Player. <u>See</u> Record Document 94, Ex. 1 at 2. Under these facts, Yount and Player are too dissimilar to be similarly situated. Moreover, like Breaux, Yount was never dismissed from service so he cannot be compared to Player for the purpose of determining his failure to reinstate claim.

For the reasons stated, the court concludes that the six alleged comparators are not similarly situated to Player for the purpose of establishing a prima facie case of discrimination. Therefore, Player has failed to demonstrate a genuine dispute of material fact with respect to his prima facie case of discriminatory dismissal and failure to reinstate.

## 2.     Pretext.

Assuming arguendo that Player had established his prima facie case, the evidence he presents is insufficient to show that KCS's reasons for dismissal and failure to reinstate are pretextual.  KCS has met its burden of producing a legitimate, nondiscriminatory reason for the adverse employment action by stating that dismissal was appropriate under its disciplinary policy considering the seriousness of the bypassed coupler incident and Player's prior discipline history.[13]   See Record Document 94 at 7.

Once the employer produces a legitimate, nondiscriminatory reason for the challenged employment action, the plaintiff must produce substantial evidence of pretext rebutting each of the nondiscriminatory reasons proffered by the employer. See Wallace v. Methodist Hosp. Sys., 271 F.3d 213, 219-20 (5th Cir. 2001).  "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"  Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003).  "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken

---

[13] The court finds that KCS's reasons for failure to reinstate Player are the same as its reasons for dismissal.  KCS also mentions that Player has presented no evidence that he ever sought to be reinstated.  See Record Document 94 at 9.

together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." Id.

As discussed previously, Player has failed to present evidence of disparate treatment by not identifying any employees of the non-protected class who were treated more favorably under "nearly identical" circumstances. See Turner v. Kan. City S. Ry. Co., 622 F.Supp.2d 374, 394 (E.D. La. 2009). Player also fails to demonstrate that KCS's proffered reasons are unworthy of credence. He has signed acknowledgments admitting responsibility for five violations of KCS's operational and safety rules within the last three years. An investigation was conducted to determine who was at fault for the incident which resulted in Player's dismissal. The PLB also found that Player was responsible for the violation and that KCS "met [its] necessary burden of proof for the administration of a severe disciplinary penalty." See Record Document 80, Ex.8. Although the PLB stated that the punishment was "harsh and unreasonable", the court does not find this harms the credibility of KCS's reasons for dismissal. "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." Mayberry, 55 F.3d at 1091.

Player alleges that KCS's explanations are unworthy of credence because KCS did not follow its own disciplinary policy; however, the evidence he presents does not

16

support that allegation.  He claims that human resources never reviewed any employee terminations in compliance with KCS's discipline policy because Kathy Alexander, the Director of Labor Relations, testified that no efforts were made to compare the discipline with other employees who committed the same or similar offenses.  Player conflates the act of not comparing disciplinary actions for similar offenses with the act of not reviewing or approving disciplinary actions altogether. Conclusory and unsubstantiated allegations will not satisfy the plaintiff's burden at summary judgment.  See Ramsey, 286 F.3d at 269.  Player has failed to establish that KCS's reasons for its adverse employment action are pretextual.  Accordingly, the court grants KCS's motion for summary judgment for Player's discrimination claims.

## C.  **Retaliation.**

Player also brings retaliation claims under Title VII and section 1981 with respect to his dismissal and failure to be reinstated.  Title VII makes it unlawful for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a). Like discrimination claims, retaliation claims are analyzed under the McDonnell

Douglas framework.  See McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir.

2007).  To establish a prima facie case of retaliation, Player must demonstrate that:

> (1) he participated in an activity protected by [the law]; (2) his employer
> took an adverse employment action against him; and (3) a causal
> connection exists between the protected activity and the adverse
> employment action.

McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007).

Player claims KCS retaliated against his act of filing an EEOC complaint by

failing to reinstate him after his dismissal.  KCS argues that Player cannot succeed in

his retaliation claim because he has not submitted evidence that anyone with authority

to reinstate him had knowledge of his EEOC charge on March 2, 2006.  The Fifth

Circuit has "determined that, in order to establish the causation prong of a retaliation

claim, the employee should demonstrate that the employer knew about the employee's

protected activity." Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 883 (5th

Cir. 2003).  "If an employer is unaware of an employee's protected conduct at the

time of the adverse employment action, the employer plainly could not have retaliated

against the employee based on that conduct." Chaney v. New Orleans Pub. Facility

Mgmt., Inc., 179 F.3d 164, 684 (5th Cir. 2001).

Mr. Player has presented no evidence that anyone with authority to reinstate

him had actual knowledge of his EEOC filing, nor is an EEOC filing in itself

sufficient to infer such knowledge.  See Lee, 574 F.3d at 257.  In Lee, the Fifth

Circuit found that the filing of an EEOC complaint alone does not indicate KCS

management had knowledge of the complaint.  See id.  Player's lack of evidence

pointing to such knowledge does not create a genuine dispute of material fact for his

retaliation claim to survive summary judgment.

## III.  CONCLUSION

For the foregoing reasons, KCS's motion for summary judgment is

**GRANTED**.  Player's Title VII and section 1981 claims for racial discrimination and

retaliation are **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of this Memorandum Ruling will issue

herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the ___15___ day of

November, 2011.

_____

JUDGE TOM STAGG